**ANSAM ASSOCIATES, INC. and Ansam Associates, Inc., as Nominee for Frank Dickstein, Gerald Acker, Jules Becker, Harold Cagen, Joan Keyloun, Irma Wertheimer, Andrew Tananbaum, Andrea Nouryeh, Samuel Spielberg, Richard Kaplan, Philip Kaplan, Barbara Burstin, Patricia Berman (as Trustee for Lynn Berman, Andrew Berman and Abby Berman) and Meyer Berman, Plaintiffs-Appellants,**

v.

**COLA PETROLEUM, LTD., Defendant-Appellee.**

No. 725, Dockets 84–7546, 84–7660.

United States Court of Appeals, Second Circuit.

Argued Feb. 5, 1985.

Decided April 24, 1985.

Clinton W. Walker, New York City (Spengler Carlson Gubar Brodsky & Frischling, Pat R. Shapiro, New York City, of counsel), for plaintiffs-appellants.

Joseph P. Zammit, New York City (Reavis & McGrath, P.C., Kimberlee S. Bogen, Lawrence A. Spector, New York City, of counsel), for defendant-appellee.

Before LUMBARD, MANSFIELD and PIERCE, Circuit Judges.

LUMBARD, Circuit Judge:

Plaintiffs, Ansam Associates, Inc. and Ansam Associates, Inc. as nominee for several individual investors (collectively "Ansam"), appeal from judgments of the Eastern District of New York, John R. Bartels, Judge, entered on July 1, 1983 and May 24, 1984, that denied the plaintiffs' motion to amend their amended complaint, granted defendant summary judgment on the fraud, accounting, and negligence claims, and dismissed, after a two-day non-jury trial, plaintiffs' reformation claim. Subject matter jurisdiction is based upon section 22 of the Securities Act of 1933, 15 U.S.C. § 77v (1976). Judge Bartels ruled that amending the amended complaint after discovery was completed and after the defendant had moved for summary judgment would unfairly prejudice the defendant. The court granted summary judgment on the fraud and negligence claims on the ground that plaintiffs had come forward with no evidence of specific facts that could support a finding that the defendant's statements were misrepresentations or that the defendant's allegedly negligent conduct caused a loss. Finally, the court refused to reform the contract because the plaintiffs offered no evidence of mistake on the part of either party. On appeal, plaintiffs contend (1) that they should have been permit-

ted to amend their complaint to conform to the evidence; (2) that summary judgment on the newly proposed fraud claim would have been inappropriate; (3) that a triable issue of fact existed on the negligence claim; and (4) that the court should have fashioned some alternate equitable remedy other than reformation. For reasons that follow, we affirm the judgments of the district court.

In November, 1980, pursuant to three letter agreements, Jack Wilder purchased from Cola Petroleum, Inc. ("Cola") a 20% "working interest" in three oil properties (the "Cole Creek Prospects") in Natroma County, Wyoming. Each letter agreement was signed by Wilder and Thomas Garber, then the president of Cola. Wilder then assigned his "working interest" to Ansam Associates, Inc., a corporation of which he is chairman of the board and a 50% shareholder.

On December 10, 1980, Wilder returned to Cola three signed authorizations for expenditure setting forth the estimated expenses for the oil production in the Cole Creek Prospects. At the bottom of each authorization was a provision noting that the estimated expenses were only estimates, and that the "approval of this authorization shall extend to the actual costs incurred in conducting the operations specified, whether more or less than herein set out." On December 30, 1980, Ansam mailed two checks, totalling $274,500, to Cola, and stated in the covering letter: "[e]nclosed are two (2) checks, one in the amount of $124,500.00 and the other in the amount of $150,000.00 in partial payment of the above wells. The balance due of $25,500.00 will follow shortly."

In June, 1981, after completion of the drilling of the Cole Creek Prospects, Cola demanded that Ansam pay $143,164.79, an amount which included 20% of the cost overruns. Ansam refused to make such payment and contended that the agreement with Garber limited its liability to $300,000; Ansam asserted that because it had already paid $274,500, it only owed $25,500.

This action was commenced on April 2, 1982, in the New York Supreme Court, and then removed to the District Court for the Eastern District of New York on May 12, 1982. Ansam's complaint set forth five causes of action seeking: (1) damages for violations of §§ 11, 12, and 17 of the Securities Act of 1933 resulting from material misrepresentations made by Cola to induce Wilder to acquire an interest in the Cole Creek Prospects; (2) damages for common law fraud based on the same misrepresentations; (3) declaratory judgment that the parties had agreed that Wilder's liability would be limited to $300,000 and reformation of any written documents to reflect this agreement; (4) an accounting; and (5) damages for Cola's negligence in failing to extract oil from the Cole Creek Prospects.

After granting numerous requests by Ansam to extend discovery, Judge Bartels set March 31, 1983 as the discovery deadline. On April 7, 1983, Cola moved for summary judgment. On May 5, 1983, Ansam cross-moved to amend its amended complaint in order to allege facts supposedly uncovered during discovery. Ansam also cross-moved for summary judgment on its reformation claim.

On June 9, 1983, Judge Bartels denied Ansam's motion to amend and granted Cola's motion for summary judgment on the fraud, accounting, and negligence claims. (Ansam had already abandoned its accounting claim as well as its negligence claim with regard to two of the three oil wells in issue.) Both motions for summary judgment on the reformation claim were denied. On the same day, the court filed an order, apparently pursuant to Fed.R. Civ.P. 54(b), reflecting this decision. Judgment on four of the five causes of action was entered on July 1, 1983.

After a two-day bench trial on the remaining reformation claim, that claim was dismissed on May 11, 1984, with judgment entered on May 24, 1984.

Ansam now appeals the denial of its motion to amend the amended complaint, as well as the dismissal of the fraud claims, the negligence claim as to the third well of

the Cole Creek Prospects (well "13–10"), and the reformation claim.

*The Rule 54(b) Certification.*

██ We must first deal with Cola's motion to dismiss as time-barred that portion of Ansam's appeal that relates to the district court's summary judgment determination and denial of Ansam's motion to amend. We think the district court's July 1, 1983 judgment is appealable.

Cola alleges that the June 9, 1983 order contained a certification pursuant to Fed.R. Civ.P. 54(b) directing entry of a final judgment as to the claims the court dismissed. Accordingly, argues Cola, if Ansam wanted to appeal any part of the judgment, it had to do so within thirty days. *See* 28 U.S.C. § 2107. Instead, Ansam did not file its notice of appeal until June 21, 1984, nearly one year after the July 1, 1983 judgment. Thus, Cola contends, Ansam's appeal should be limited to a review of the May 24, 1984 judgment dismissing the reformation claim.

Rule 54(b) of the Federal Rules of Civil Procedure provides in pertinent part that "the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." The propriety of a Rule 54(b) certification is reviewable by the court of appeals. *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 437, 76 S.Ct. 895, 900–01, 100 L.Ed. 1297 (1956). Ansam argues that the district court's June 9, 1983 order did not contain a proper Rule 54(b) certification; the district court merely stated, "there being no just reason for delay, the Clerk is hereby directed to enter judgment forthwith as to the said claims ...," without reference to Rule 54(b).

██ We have repeatedly stated that "in making the 'express determination' required under Rule 54(b), district courts should not merely repeat the formulaic language of the rule, but rather should offer a brief, reasoned explanation." *Cullen v. Margiotta,* 618 F.2d 226, 228 (2d Cir.1980) (citing *Arlinghaus v. Ritenour,* 543 F.2d 461, 464 (2d Cir.1976)); *see Gumer v. Shearson, Hammill & Co.,* 516 F.2d 283, 286 (2d Cir.1974); *Schwartz v. Compagnie General Transatlantique,* 405 F.2d 270, 275 (2d Cir.1968). One of the primary policies behind requiring an articulated justification for a 54(b) certification is the desire to avoid "piecemeal appeals." *Cullen,* 618 F.2d at 228. Especially today, with the proliferation of appeals and consequent increased burden on appellate courts, unrestrained application of Rule 54(b) is strongly disfavored. In accordance with this policy, we have followed the reasoned rule of the Third Circuit that "54(b) orders should not be entered routinely or as a courtesy or accommodation to counsel. The power which this Rule confers upon the trial judge should be used only 'in the infrequent harsh case' ...." *Panichella v. Pennsylvania R.R.,* 252 F.2d 452, 455 (3d Cir.1958), *quoted in Cullen,* 618 F.2d at 228; *Brunswick Corp. v. Sheridan,* 582 F.2d 175, 183 (2d Cir.1978); *Arlinghaus,* 543 F.2d at 463–64.

██ A district court should grant certification only when there exists "some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Campbell v. Westmoreland Farm Inc.,* 403 F.2d 939, 942 (2d Cir.1968). Without a reasoned explanation for the certification, however, no adequate review can be conducted to determine the propriety of the certification. "It is essential ... that a reviewing court have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, and mere boiler-plate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law...." *Allis-Chalmers Corp. v. Philadelphia Electric Co.,* 521 F.2d 360, 364 (3d Cir.1975) (quoting *Protective Committee v. Anderson,* 390 U.S. 414, 434, 88 S.Ct. 1157, 1186, 20 L.Ed.2d 1 (1968)). In the instant case, the district court has failed to provide a sufficiently detailed explanation for its certification, thereby rendering a meaningful review of its determination infeasible.

In sum, as the district court's June 9, 1983 order did not adequately set forth any reasoned explanation for entry of a final judgment as to the dismissed claims, or even alert the parties to the invocation of Rule 54(b), the order was not a sufficient Rule 54(b) certification. Accordingly, we address the merits of Ansam's appeal in their entirety.

*Motion to Amend.*

On May 5, 1983, after the time for discovery had run, and Cola had filed for summary judgment, Ansam moved to amend its amended complaint. Specifically, Ansam sought, *inter alia,* to substitute for its allegations of fraudulent misrepresentations as to certain facts new allegations of material omissions as to different facts. The district court denied Ansam's motion for leave to file a second amended complaint on the ground that Cola would be unfairly prejudiced if compelled to defend against the newly proposed allegations.

 The denial of leave to amend a pleading should not be overturned absent an abuse of discretion on the part of the district court. *Barrows v. Forest Laboratories, Inc.,* 742 F.2d 54, 58 (2d Cir.1984). Although generally leave to file an amended pleading "shall be freely given," Fed.R. Civ.P. 15(a), "the trial court [is] required to take into account any prejudice" that might result to the party opposing the amendment. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330–31, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971). Ansam's new claims concerned a different period of time and were derived from a different statute. We agree with Judge Bartels that "[t]he proposed fraud claims allege an entirely new set of operative facts of which it cannot be said that the original complaint provided fair notice." Moreover, permitting the proposed amendment would have been especially prejudicial given the fact that discovery had already been completed and Cola had already filed a motion for summary judgment.

Ansam's sole justification for the belated request to amend its amended complaint is that its counsel prior to March, 1983 had failed to conduct substantive discovery. Ansam alleges that it was only after new counsel was substituted in March, 1983, that it discovered the information that formed the basis of its newly proposed claim. However, this is simply an insufficient reason for prejudicing Cola by forcing it to proceed to trial, post-discovery, on a new complaint. Accordingly, we find that Judge Bartels was justified in denying Ansam's motion to amend.

*Fraud/Negligence/Reformation.*

Ansam's first and second causes of action alleged that Garber made material misrepresentations to Wilder which induced Wilder to invest in the Cole Creek Prospects. In granting summary judgment to Cola on these claims, the district court explained that the "[d]eposition testimony of both Garber and Wilder unequivocally establishes that there is no evidentiary basis for Ansam's allegations of false representations ... Ansam has totally failed to rebut or, for that matter, address Cola's strong showing that no genuine dispute exists as to the truthfulness of the alleged representations." Ansam does not dispute that the dismissed misrepresentation claims had no basis in fact. Rather, Ansam simply asserts that its fraud claims should not have been dismissed because Judge Bartels should have granted Ansam leave to substitute its claims of misrepresentation with its newly proposed claims of material omissions. Given that we have determined that Judge Bartels properly denied Ansam's motion to amend, however, Ansam's argument necessarily falls.

 Ansam also appeals the dismissal of its negligence claim as to well 13–10. Ansam asserts that there was a sufficient question of fact as to whether the alleged negligence in drilling the well caused the loss of recoverable oil. In support of its allegation, Ansam submitted only the affidavit of Robert I. Simons, a consulting geologist for the Cole Creek Prospects, who asserted only that it was "quite possible" that Cola had perforated the well at an

incorrect depth, and was thus looking for oil in the wrong place. However, "the mere possibility that a factual dispute *may* exist, without more, is not sufficient to overcome a convincing presentation by the moving party." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (emphasis in original). Accordingly, we agree with the district court that "[c]onjecture of this sort ... is insufficient to raise a genuine issue of fact in light of Cola's strong evidentiary showing that well 13–10 was adequately tested and shown to be 'dry'."

Finally, Ansam challenges the district court's determination that the three November 4, 1980 letters constituted contractual agreements as well as the determination that reformation was the only possible equitable remedy available to Ansam.

■ Ansam alleges that Garber and Wilder orally agreed that Wilder's liability would be limited to $300,000 and that the November 4, 1980 letters were not intended to be contractual agreements. This directly contradicts the three letters signed by Wilder, none of which included a clause limiting Wilder's liability, and each of which stated "[t]his letter is to evidence the agreement between Cola ... and Jack Wilder." Moreover, Ansam's claim that the liability was to be limited is also inconsistent with the three authorizations for expenditures signed by Wilder which each provided that Wilder would be liable for "the actual costs incurred in conducting the operations specified, whether more or less than" the estimates. Ansam argues that Garber orally assured Wilder that the November 4, 1980 letters did not constitute a contract and that a definitive agreement, which would include the $300,000 limitation of liability clause, would be sent to Wilder at a later time. However, "parol evidence is not admissible to show prior oral representations contrary to the plain and unambiguous writing ... Where the plain writing is inconsistent with the alleged prior oral agreement there is no basis for a claim of an estoppel ...." *Ginsberg v. Fairfield-Noble Corp.*, 81 A.D.2d 318, 321–22, 440 N.Y.S.2d 222, 225 (1st Dep't 1981) (citations omitted). Thus, we agree with the district court that the November 4, 1980 letters constituted contractual agreements.

■ At the conclusion of the non-jury trial, the district court concluded that Ansam was not entitled to reformation because Ansam could prove neither mutual mistake nor unilateral mistake coupled with fraud or inequitable conduct by the non-erring party. *See John Hancock Mutual Life Insurance Co. v. Carolina Power & Light Co.*, 717 F.2d 664, 671 (2d Cir.1983). Ansam apparently concedes that it is not entitled to reformation. Rather, Ansam alleges that the district court improperly limited the scope of Ansam's possible remedies to reformation of the letter agreements. This argument is also unfounded. The only other remedy suggested by Ansam was a "declaratory judgment that [Cola] is estopped from asserting any liability for costs and expenses associated with the Prospect as against [Ansam], in excess of $300,000." However, as a practical matter, a declaratory judgment such as this is equivalent to reformation and thus the reasons for rejecting Ansam's claim for reformation are the same for rejecting its claim for a declaratory judgment.

In sum, the judgments are affirmed.